Receipt Number
539132

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED GLOBAL SOURCING, INC., a
Michigan corporation,

        Plaintiff,

vs.

DEAN CLARK, an individual, and MARK
JOHNSON, an individual,

        Defendants.

Exhibits A-D

Case: 5:06-cv-10883
Assigned To : O'Meara, John Corbett
Referral Judge: Scheer, Donald A
Assign. Date : 2/28/2006 @ 12:42 P.M.
Description: CMP UTD GLOBAL
SOURCING V. CLARK, ET AL
(TAM)

---

Kevin M. Zielke (P53872)
Adam B. Strauss (P53319)
Laura C. Baucus (P56932)
Attorneys for United Global
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, Michigan 48243
(313) 568-6908
   *Attorneys for Plaintiff*

---

## COMPLAINT

United Global Sourcing, Inc. ("UGS"), through its attorneys, Dykema Gossett PLLC,

states as follows for its Complaint:

### PARTIES

1.    UGS is a Michigan corporation with its principal place of business at 269

Executive Drive, Troy, Michigan 48083.

2.    Upon information and belief, Defendant Dean Clark is an individual residing in

the City of Riverton, in the County of Fremont, in the State of Wyoming.

3.     Upon information and belief, Defendant Mark Johnson is an individual residing in the City of Riverton, in the County of Fremont, in the State of Wyoming.

## JURISDICTION AND VENUE

4.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

6.     Venue is also proper in the Eastern District of Michigan because the claims giving rise to this action are based on a Technology License Agreement dated February 24, 2005 between UGS and the Defendants which provides in Section 14.B that "[a]ny suit arising out of, or relating to, this Agreement may be brought only in the courts of the State of Michigan sitting in Oakland County, Michigan or in the United States District Court for the Eastern District of Michigan – Southern Division, and each of the parties hereby consents to the jurisdiction of, and venue in, such courts." A copy of the Technology License Agreement is attached as Exhibit A.

7.     This is an action, in part, for declaratory judgment pursuant to 28 U.S.C. § 2201, seeking to resolve an actual controversy between Plaintiff and Defendants construing the rights and obligations under the Technology License Agreement.

## GENERAL ALLEGATIONS

8.     UGS is engaged in the business of, among other services, product line development, prototyping, and global sourcing for manufacturers.

9.     On or about November 2, 2004, Mr. Clark contacted Ken Williamson, Vice President, Sales, for UGS. Mr. Clark represented that he and Mr. Johnson, his business partner,

2

had developed a new design for an umbrella stand for a deck surface. Specifically, Mr. Clark stated that the design was "new" and "unlike anything already on the market."

10.    Upon information and belief, on or about January 11, 2005, Mr. Clark and Mr. Johnson filed a patent application with the United States Patent and Trademark Office ("PTO") for the umbrella stand entitled "Support Base For Use On Decked Surfaces." Upon information and belief, the PTO has assigned this application Serial No. 11/034,135.

11.    In reliance upon Mr. Clark's representation that the umbrella stand was "new" and "unlike anything already on the market," UGS entered into the Technology License Agreement with Mr. Clark and Mr. Johnson.

12.    The Technology License Agreement, at Section 5.A, clearly and unambiguously required Mr. Clark and Mr. Johnson to bear all costs associated with prosecution of the pending patent application for the umbrella stand.

13.    The Technology License Agreement provides, among other things, that:

A. [UGS] agrees to invest capital to bring the Licensed Umbrella Stand to market. The parties agree that an estimate of the capital [UGS] will be required to invest is about $190,200.00, as follows:

| | |
|---|---|
| (1)  Tooling | $8,200.00 |
| (2)  Designing | $5,000.00 (Cosmetic Enhancements) |
| (3)  Packaging/Artwork: | $3,000.00 |
| (4)  Marketing materials: samples) | $5,000.00 (for example, catalogs and |
| (5)  Trade Shows: | $15,000.00 |
| (6)  Misc. Expenses: | $4,000.00 |
| (7)  Inventory Position Umbrella Stands in inventory) | $150,000.00 (8,000 Licensed |

(Technology License Agreement, ¶ 7)

3

14.    At the time the parties entered into the Technology License Agreement, the parties understood that the Inventory Position of UGS's investment would occur only if Mr. Clark and Mr. Johnson successfully obtained a patent, and if UGS secured an end customer for the umbrella stands since, in the absence of patent protection and an end customer, it would not make sense or be reasonable to generate an inventory of 8,000 pieces.

15.    Since entering the Technology License Agreement, and in full compliance with the terms of that agreement, UGS has invested more than $24,000.00 in marketing, trade shows, designing, miscellaneous expenses, and other development costs associated with the umbrella stand.

16.    UGS has discovered that, contrary to Mr. Clark's representations, the design for the umbrella stand is not "new" or "unlike anything already on the market." This fact has severely hampered UGS's efforts to obtain an end customer.

17.    In addition, Mr. Clark and Mr. Johnson have not, as yet, secured patent protection for the umbrella stand.

18.    In June and July of 2005, Mr. Clark and Mr. Williamson telephoned each other in attempts to discuss the status of the Technology License Agreement.

19.    On or about July 27, 2005, Mr. Clark faxed Mr. Williamson a letter asserting that UGS must invest the entire estimated amount of $190,200.00 regardless of whether UGS has secured an end customer, in contrast to the parties' understanding. A copy of this letter is attached as Exhibit B. Mr. Clark further asserted in this letter that he "relied on [UGS's] promises and invested a significant amount of money in filing a patent application," notwithstanding that Mr. Clark's and Mr. Johnson's patent application was filed 45 days before the parties entered into the Technology License Agreement.

4

20.    On or about August 9, 2005, Mr. Williamson faxed Mr. Clark a letter confirming receipt of the July 27, 2005 letter, and advising Mr. Clark that, due to his travel schedule, he needed additional time to respond to Mr. Clark's letter. On or about August 23, 2005, Mr. Williamson faxed Mr. Clark a substantive letter in response to Mr. Clark's July 27th letter. A copy of the August 23, 2005 letter is attached as Exhibit C. In it, Mr. Williamson, reminded Mr. Clark that "UGS did not agree and is not required to make any sort of lump sum investment, but, instead, is to invest capital as different stages are reached in the effort to bring the Umbrella Stand to market." Mr. Williamson also explained that:

> At the time the Agreement was entered into, it was clearly understood that this portion of UGS' investment would occur only if you and Mark [Johnson] successfully obtained a patent, a necessary precursor to bringing the Umbrella Stand to market, and if UGS secured an end customer for the umbrella stands as it would make little sense for UGS to spend $150,000 to secure 8,000 pieces of inventory prior to receiving patent protection and without a purchaser in place for such a substantial volume of inventory.

21.    Mr. Williamson also noted in his August 23rd letter that:

> In agreeing to undertake this effort ... UGS relied on representations made by you and Mark [Johnson] that the umbrella stand was "new" and "unlike anything already on the market." In fact, just the opposite appears to be true. A fact which has severely hampered our effort to obtain an end customer.

22.    Nearly three months later, on or about November 16, 2005, Mr. Clark faxed UGS a letter denying the parties' understanding that UGS's investment of about $190,200 was conditioned upon the issuance of a patent for the umbrella stand, and denying that he and Mr. Johnson misled UGS. A copy of this letter is attached as Exhibit D.

## COUNT I – DECLARATORY JUDGMENT AS TO
## THE TECHNOLOGY LICENSE AGREEMENT

23.    UGS incorporates the allegations of paragraphs 1-22.

24.    There is an actual controversy concerning the rights of the parties under the Technology License Agreement, and a declaratory judgment is necessary for the purpose of

settling and affording relief from uncertainty with respect to the rights, status and future legal relations between the parties.

25.     UGS requests, and the interests of the parties to this action require, a judicial determination of the parties' obligations under the Technology License Agreement including, but not limited to, the timing and conditions precedent necessary for UGS to invest in the development of the licensed umbrella stand.

WHEREFORE, UGS requests entry of a judgment declaring that:

A.     UGS is not obligated to invest in the development of the licensed umbrella stand until Mr. Clark's and Mr. Johnson's pending patent application issues as a patent; and

B.     UGS is not obligated to invest in the development of the licensed umbrella stand until UGS's secures an end customer.

UGS also requests its costs and attorneys fees, and such other relief as it is determined to be entitled to.

## COUNT II – BREACH OF CONTRACT

26.     UGS incorporates the allegations of paragraphs 1-25.

27.     Defendants represented in the Technology License Agreement "that they have developed new and useful improvements in an invention entitled 'Support Base for Use on Decked Surfaces.'"

28.     For at least the reasons stated above, this representation is not true and Defendants have breached the Technology License Agreement with UGS.

29.     UGS has been damaged by Defendants' breach.

WHEREFORE, UGS requests that this Court enter judgment in its favor and against Defendants for all damages it is entitled to recover, including its costs and attorneys fees, and grant such other relief as it is determined to be entitled to.

## COUNT III – FRAUD IN THE INDUCEMENT

30.     UGS incorporates the allegations of paragraphs 1-29.

31.     Defendants represented to UGS prior to the execution of the Technology License Agreement that their umbrella stand was "new" and "unlike anything already on the market."

32.     Upon information and belief, Defendants knew when they made these representations that they were false.

33.     Upon information and belief, Defendants made these representations to UGS knowing the representations would be material to UGS in deciding whether to enter into the Technology License Agreement.

34.     Upon information and belief, Defendants made these representations to UGS expecting that UGS would rely on them in entering into the Technology License Agreement with Defendants.

35.     UGS relied upon these representations in entering into the Technology License Agreement with Defendants.

36.     As a result, UGS has incurred damages.

WHEREFORE, UGS requests that this Court enter judgment in its favor and against Defendants for all damages it is entitled to recover, including its costs and attorneys fees, and grant such other relief as it is determined to be entitled to.

## COUNT IV – RESCISSION

37.     UGS incorporates the allegations of paragraphs 1-36.

38.    UGS is alternatively entitled to equitable rescission of the parties' Technology License Agreement.

WHEREFORE, UGS requests that this Court enter judgment in its favor and against Defendants for all damages it is entitled to recover, including its costs and attorneys fees, and grant such other relief as it is determined to be entitled to.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: _____
Laura C. Baucus (P56932)
lbaucus@dykema.com
Kevin M. Zielke (P53872)
kzielke@dykema.com
Adam B. Strauss (P53319)
astrauss@dykema.com
400 Renaissance Center
Detroit, Michigan 48243
(313) 568-6908/ 248-203-0796

Attorneys for United Global Sourcing, Inc.

Date: February 28, 2006

BH01\570325.2
ID\ABST

8



*ATTͦ͟   DEAN CLARK*

# TECHNOLOGY LICENSE AGREEMENT

This Technology License Agreement, dated as of _2/24/_, 2005 ("the Effective Date," is by and between (A) Dean Clark, an individual having an address at _P.O. Box 502  Riverview, MI 48192_ and Mark Johnson, an individual having an address at _P.O. Box 504  Riverview, MI 48192_ (collectively "LICENSORS"), and (B) United Global Sourcing, Inc., a Michigan corporation having an address at 269 Executive Drive, Troy, Michigan 48083 ("LICENSEE").

## RECITALS

A.  LICENSORS represent that they have developed new and useful improvements in an invention entitled "Support Base for Use on Decked Surfaces," the invention being disclosed and claimed in United States Patent Application having Serial No. 11/034,135, filed on January 11, 2005.

B.  LICENSEE desires to obtain, and LICENSORS are willing to grant, an exclusive license under the Licensed Technology.

In consideration and reliance on the foregoing and the mutual covenants set forth below, LICENSORS and LICENSEE agree as follows:

## 1. DEFINITIONS

A.  "Licensed Umbrella Stand" means any support base assembly which incorporates the Licensed Technology.

B.  "Affiliate" means, as to either party to this Agreement, an entity or person controlling, controlled by or under common control with such party.

C.  "Licensed Patents" means the U.S. patent application having Serial No. 11/034,135, and any subsequently filed continuations, continuations-in-part and divisional applications, including re-examinations and re-issues thereof and corresponding foreign applications and patents, as well as any patent applications and patents directed to improvements by the LICENSORS in the Licensed Technology.

D.  "Licensed Technology" means the Licensed Patents and all know-how, trade secrets, inventions, processes, software, data and other information which LICENSORS possess or may acquire during the term of this Agreement and which is useful for the development, manufacture, use or sale of Licensed Umbrella Stands.

E.  "Production Date" means the date on which the tooling identified in Section 7.A(1) is completed, sample Licensed Umbrella Stands have been approved by LICENSEE, and at least 2,500 Licensed Umbrella Stands are in the United States for sale and distribution.

1

## 2. GRANT OF EXCLUSIVE LICENSE

LICENSORS grant to LICENSEE an exclusive world-wide license, with the right to sublicense, to use the Licensed Technology, and, to make, have made, use, sell, and offer for sale Licensed Umbrella Stands. LICENSEE shall have the right to sub-license the Licensed Technology to third parties, including a LICENSEE Affiliate.

## 3. TECHNICAL ASSISTANCE

A. LICENSORS will provide to LICENSEE in confidence all proprietary information relating to the Licensed Technology reasonably necessary for LICENSEE's use.

B. LICENSORS will provide without charge to LICENSEE all necessary engineering, design and development services as LICENSEE may reasonably request for the design and development of Licensed Umbrella Stands. The actual fabrication and costs of fabrication in connection with such activity shall be borne by LICENSEE.

## 4. IMPROVEMENTS

A. All improvements, as well as all other proprietary rights in the field of the Licensed Technology, owned by LICENSORS or owned by third parties and licensed to LICENSORS with right of sub-license, shall automatically be included in the Licensed Technology at no additional royalty.

B. All improvements in the field of the Licensed Technology invented jointly by employees of LICENSEE or a LICENSEE Affiliate and LICENSORS (or employees of LICENSORS) or any LICENSORS Affiliate shall be owned jointly by LICENSORS and LICENSEE, and shall automatically be included in the Licensed Technology at no additional royalty.

C. LICENSOR shall have no claim of ownership in any improvement, or other proprietary rights in the field of the Licensed Technology invented solely by employees of LICENSEE or any LICENSEE Affiliate, or jointly by such employees with third party co-inventors.

## 5. PATENT PROSECUTION

A. LICENSORS agree to diligently file, prosecute, and maintain, upon consultation with LICENSEE as discussed in this Section, the Licensed Patents, including without limitation, any patent applications or patents relating to any Improvement identified in Sections 4.A and 4.B.

B. LICENSORS shall provide LICENSEE copies of all prosecution documentation within two weeks of receiving or filing such documents. LICENSORS shall also provide an advance draft copy of any papers related to the filing, prosecution, and maintenance of such patent filings. LICENSEE may comment upon such documentation, provided that if LICENSEE has not commented upon such documentation before the initial deadline for filing a response with the relevant patent office, LICENSORS shall be free to respond appropriately without

2

consideration of LICENSEE's comments. LICENSEE agrees to keep this documentation in confidence.

C. LICENSORS shall use all reasonable efforts to prepare or amend any U.S. or foreign patent application to include claims reasonably requested by LICENSEE to protect the Licensed Umbrella Stands contemplated to be sold or procedures to be practiced under this Agreement.

D. LICENSORS shall give one hundred and twenty (120) days notice to LICENSEE of any desire to cease prosecution or maintenance of a Licensed Patent and, in such case, shall permit LICENSEE, at its sole discretion, to continue prosecution or maintenance at LICENSEE's own expense. If LICENSEE elects to continue prosecution or maintenance, LICENSORS shall execute such documents and perform such acts as may be reasonably necessary to effect an assignment of such patent rights to LICENSEE for no additional consideration. Any such assignment shall be completed in a timely manner to allow LICENSEE to continue such prosecution or maintenance. Any patents or patent applications so assigned shall not be cease to be a Licensed Patent under this Agreement.

6. **ROYALTY**

A. LICENSEE agrees to pay LICENSORS $0.60 for each Licensed Umbrella Stand sold during the term of this Agreement up to a maximum of 200,000 Licensed Umbrella Stands ($120,000.00).

B. The royalty payments required by this Section 6 shall be made within thirty (30) days following the end of each calendar quarter, and shall be accompanied by a report of the total sales all Licensed Umbrella Stands sold during the preceding calendar quarter. Such payments shall be in United States dollars. LICENSEE shall maintain accurate books and records reflecting its operations under this Agreement.

7. **DEVELOPMENT AND TOOLING**

A. LICENSEE agrees to invest capital to bring the Licensed Umbrella Stand to market. The parties agree that an estimate of the capital LICENSEE will be required to invest is about $190,200.00, as follows:

    (1) Tooling          $8,200.00

    (2) Designing      $5,000.00 (Cosmetic Enhancements)

    (3) Packaging/Artwork: $3,000.00

    (4) Marketing materials: $5,000.00 (for example, catalogs and samples)

    (5) Trade Shows:    $15,000.00

    (6) Misc. Expenses:  $4,000.00

3

(7) Inventory Position     $150,000.00 (8,000 Licensed Umbrella Stands in inventory)

B. As between LICENSORS and LICENSEE, LICENSEE shall own all tooling, trademarks/trade dresses (together with the goodwill of the business symbolized thereby), copyrights, marketing materials, packaging/artwork, customer lists, and inventory resulting from LICENSEE's capital investment.

## 8. TERM AND TERMINATION

A. The Term of this Agreement will commence on the Effective Date and will expire at the earlier of the third anniversary of the Production Date or upon LICENSEE paying LICENSORS royalties for a total of 200,000 Licensed Umbrella Stands.

B. The parties may agree in writing to extend the Term of the Agreement.

## 9. CONFIDENTIALITY

A. LICENSORS and LICENSEE acknowledge that each party possesses and will in the future possess additional confidential, proprietary information which they consider valuable, and that operation under this Agreement will occasionally necessitate the exchange of portions of such information for their mutual benefit. Accordingly, LICENSORS and LICENSEE each agree (1) to receive each other's confidential information in confidence and to treat it with the same degree of confidentiality as they treat their own confidential information, (2) to limit disclosure thereof to persons reasonably requiring same to fulfill the mutually beneficial purposes of this Agreement, (3) to advise all such persons of the confidential nature thereof, and (4) to refrain from use thereof for any purpose other than for the mutual benefit of the parties to this Agreement.

B. Nothing in this Section 9 shall limit LICENSORS' or LICENSEE's right to use or disclose information which was (1) already known to the receiving party prior to the disclosure by the disclosing party, as shown by the receiving party's prior written records, or (2) is or later becomes generally available to the public other than by breach of the above restrictions by the receiving party.

C. The restrictions of Paragraph 9.A shall continue for a period of three (3) years following termination of this Agreement, except with respect to any confidential information which is published or otherwise becomes generally available to the public through no fault of the party to this Agreement who received such information from the other, in which case such restrictions shall terminate upon such publication or availability.

## 10. INFRINGEMENT

A. LICENSORS and LICENSEE shall promptly notify each other in writing of any apparent third party infringement of the Licensed Patents which comes to their attention. LICENSEE shall, in its sole discretion, commence, and thereafter diligently prosecute, an action to enjoin such third party infringement, actual or prospective. Such action shall be controlled by and be at the expense of LICENSEE. LICENSORS agree to cooperate and assist in such

4

infringement action including, being named as a party plaintiff if required. All settlement or damage awards in such an action shall be apportioned as follows: (1) LICENSEE shall retain so much of the settlement or damage award as to compensate for all the expense attendant such action incurred by LICENSEE; (2) Any surplus above such amount necessary for compensation shall be split equally between LICENSORS and LICENSEE; provided, however, that in no case shall LICENSORS' apportionment be more than LICENSORS would have received had such third party been licensed by LICENSORS and paid a running royalty in accordance with the provisions of Section 6 of this Agreement; and, (3) LICENSEE shall retain any remaining amount of such settlement or damage award after apportionment under Paragraphs 10.A AND 10.B.

B. In the event that LICENSORS fail to assist and cooperate with LICENSEE in such infringement action then LICENSEE shall be entitled to reduce by fifty percent (50%) the running royalty payments otherwise required by Section 6 for LICENSEE's activities in the country where the infringement occurs until such assistance and cooperation is forthcoming or such infringement has terminated.

C. LICENSORS shall, in the event that LICENSEE in its sole discretion declines to commence such infringement action have the right, but not the obligation, to commence such infringement action in its name at its own expense, under its sole control and for its sole benefit. LICENSORS shall keep LICENSEE fully informed as to such action, and, after consultation with LICENSEE, will be solely responsible for all strategy and conduct of the action, including settlement thereof. LICENSEE shall cooperate with and assist LICENSORS in such action, at LICENSORS' expense, where reasonably requested by LICENSOR.

D. If either party to this Agreement becomes aware of any claim by a third party that a patent or other right owned by it is infringed by the development, manufacture, use, license, sale, offer for sale or other activity relating to the Licensed Umbrella Stands ("Patent Infringement"), then that party must promptly provide the other party notice of the third-party claim and the related facts in reasonable detail. LICENSEE will have the right to participate in the defense of any third-party claim and to be represented in any such action by counsel of its selection at its sole discretion and expense. LICENSEE will also have the right to control the settlement of any third-party claim.

## 11. ASSIGNMENT OF LICENSED PATENT

A. LICENSORS shall not assign the Licensed Patent, or any rights under the Licensed Patent, to any other party during the term of this Agreement.

B. If LICENSEE pays royalties to LICENSORS for a total of 200,000 Licensed Umbrella Stands by the end of the Term of this Agreement, LICENSORS agree to assign to LICENSEE the Licensed Patent, for $5,400.00.

## 12. REPRESENTATIONS AND WARRANTIES

A. LICENSORS and LICENSEE each represent and warrant that they have the power ...nd authority to enter into and carry out the terms of this Agreement; that each intends this ...reement to be their legal, valid and binding obligation; and that this Agreement shall be

5

enforceable against them according to its terms. Furthermore, each party represents that it has not entered into any other agreement or granted any other right which is in conflict with or inconsistent with any of the terms of this Agreement, and further, that there are no actions or proceedings pending or threatened which would prevent or make unlawful the consummation of the transactions contemplated by this Agreement.

B.  LICENSORS further represent and warrant to LICENSEE that:

(1)  Licensed Technology is owned by LICENSORS and that LICENSORS have the lawful right and authority to grant the license granted by this Agreement without the consent of any other third party; and

(2)  LICENSORS have no knowledge that the Licensed Technology conflicts with, violates or infringes any rights of any third party, or that there is any other third party patent, prior art or other acts which would render any of the Licensed Technology invalid, unenforceable or unpatentable.

## 13. NOTICES

All notices, royalties, and other communications permitted or required by the provisions of this Agreement shall be in writing and shall be deemed to have been given when received, if delivered personally or by registered mail, or by telex or facsimile, or by nationally recognized courier service, in all instances all charges prepaid, addressed as follows:

If to LICENSORS:                          If to LICENSEE:

_____                  Mr. Ken Eisenbraun
                                         President
_____                  United Global Sourcing, Inc.
                                         269 Executive Drive
_____                  Troy, Michigan 48083
                                         Telephone (248) 588-7500
_____                  Fax:  (248) 588-7504

## 14. GENERAL PROVISIONS

A.  Entire Agreement.  This Agreement contains the entire understanding between the parties concerning the subject matter of this Agreement, and supersedes all prior understandings and agreements, whether oral or written, between them respecting the subject matter hereof. This Agreement may be modified only by an agreement in writing signed by both parties.

B.  Governing Law; Jurisdiction; Venue.  This Agreement is governed by the internal laws of the State of Michigan without regard for its conflict of law rules.  Any suit arising out of, or relating to, this Agreement may be brought only in the courts of the State of Michigan sitting in Oakland County, Michigan or in the United States District Court for the Eastern District of

6

Michigan – Southern Division, and each of the parties hereby consents to the jurisdiction of, and venue in, such courts.

C. Waiver. No delay or failure on the part of any party in exercising its respective rights under this Agreement, and no partial or single exercise of such rights, shall constitute a waiver of rights contained in this Agreement on a future occasion. Any waiver of rights under this Agreement shall be effective only in the specific instance and for the specific purpose for which such written waiver was given.

D. Voluntary Agreement. The Parties have read and understood this Agreement, have had an opportunity to consult with counsel, and have entered into it freely and voluntarily.

E. Severability. In case any one or more of the provisions or parts of a provision contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of part of a provision of this Agreement; and this Agreement shall, to the fullest extent permitted by law, be reformed and construed as if such invalid or illegal or unenforceable provision or part of a provision, had never been contained herein, and such provision or part reformed so that it would be valid, legal and enforceable to the maximum extent possible.

F. Relationship of the Parties. This agreement does not, and will not create any type of agency relationship between the Parties.

G. Successors and Assigns. This Agreement shall be binding on the Parties, their principals, agents, successors and assigns, parents, subsidiaries, and affiliates.

H. Neutral Interpretation. In the event of any ambiguity with respect to any portion of this Agreement, no presumption shall be drawn against the party who drafted said portion.

I. Survival. Sections 4, 7.B., 9, 11.B, 14.B, 14.E, 14.H, and 14.I. will survive the expiration or earlier termination of this Agreement indefinitely.

The parties have executed this Agreement as of the Effective Date.

**LICENSORS**

By: _Jean Clark_

Jean Clark

_Mark Johnson_

Mark Johnson

**LICENSEE**

By: _Ken Eisenbraun_

Ken Eisenbraun
President
United Global Sourcing, Inc.

BH01\5093062
ID\ABST

7



July 27, 2005

Ken Williamson
United Global Sourcing
269 Executive Dr.
Troy MI 48083

Dear Ken,

I am writing to you because you have not returned my calls regarding our agreement on the umbrella stand. As you know, the agreement clearly states that you must invest about $190,200, regardless of whether you have a buyer for the umbrella stands. I relied on your promises and invested a significant amount of money in filing a patent application. Now, I need to know exactly what your position is. Please respond by fax (307) 856-2582 by August 3, 2005.

Sincerely,

Dean Clark
P.O. Box 502
Riverton WY 82501





**UNITED GLOBAL SOURCING**
*INCORPORATED*

269 Executive Drive, Troy, Michigan 48083
Phone: (248) 588-7500 (800) 837-7501
Fax: (248) 588-7504
Email: kwilliamson@unitedgs.com

August 23, 2005

Mr. Dean Clark
P.O. Box 502
Riverton, WY 82501

Dear Dean,

I am writing in response to your letter of July 27, 2005 concerning the Technology License Agreement dated February 24, 2005 (the "Agreement"). In your letter, you contend that "the agreement clearly states that you [UGS] must invest about $190,200, regardless of whether you have a buyer for the umbrella stands. I relied on your promises and invested a significant amount of money in filing a patent application." These contentions, however, are contradicted by the facts and by the express language of the Agreement.

First, with respect to the capital investment to be made by UGS pursuant to the Agreement, Section 7.A. expressly provides as follows:

LICENSEE [UGS] agrees to invest capital to bring the Licensed Umbrella Stand to market. The parties agree that an estimate of the capital LICENSEE will be required to invest is about $190,200.00, as follows:

(1) Tooling:                    $8,200

(2) Designing:                  $5,000 (Cosmetic Enhancements)

(3) Packaging/Artwork:          $3,000

(4) Marketing materials:            $5,000 (for example, catalogs and
samples)

(5) Trade Shows:                $15,000

(6) Misc. Expenses:  $4,000

(7) Inventory Position:  $150,000 (8,000 Licensed Umbrella Stands in inventory)

Thus, contrary to your letter, UGS did not agree and is not required to make any sort of lump sum investment, but, instead, is to invest capital as different stages are reached in the effort to bring the Umbrella Stand to market. At present, UGS has invested more than $24,000 in marketing, trade shows, designing, miscellaneous expenses and other development costs. Thus, UGS is currently in full compliance with its investment obligations under the Agreement.

As provided by the Agreement, the majority of UGS' investment - $150,000 -- is to secure an 8,000 piece inventory position. At the time the Agreement was entered into, it was clearly understood that this portion of UGS' investment would occur only if you and Mark successfully obtained a patent, a necessary precursor to bringing the Umbrella Stand to market, and if UGS secured an end customer for the umbrella stands as it would make little sense for UGS to spend $150,000 to secure 8,000 pieces of inventory prior to receiving patent protection and without a purchaser in place for such a substantial volume of inventory. Under Section 5 of the Agreement, you and Mark bear all responsibility for the prosecution of the patent application. As you are aware, UGS has been attempting to secure the necessary end customer. In agreeing to undertake this effort, however, UGS relied on representations made by you and Mark that the umbrella stand was "new" and "unlike anything already on the market." In fact, just the opposite appears to be true. A fact which has severely hampered our effort to obtain an end customer.

Second, your assertion that UGS is somehow responsible for the amount you and Mark have invested to file and prosecute the patent application is equally misplaced. The patent application was filed on or about January 10, 2005 -- 45 days before we even entered into the Technology License Agreement. Thus, there is simply no way you could have relied on the February 24, 2005 Technology License Agreement in filing the January 10, 2005 patent application. In addition, as indicated above, you and Mark are responsible under Section 5 of the Agreement for the prosecution of the patent application. The Agreement does not require UGS to provide any money to assist in this effort. Therefore, any amounts expended in prosecuting the patent from the time the application was filed until the present are your costs to bear under the Agreement.

In sum, your July 27, 2005 letter ignores the facts and the express language of the Technology License Agreement. UGS will not permit you to rewrite that Agreement or to alter the facts via correspondence. UGS is currently in

full compliance with its obligations under the Agreement and it is UGS's expectation that you and Mark will live up to your obligations as well.

Please feel free to contact me if you have any other questions or concerns.

Regards,

Ken Williamson
Vice President, Sales

Cc: Ken Eisenbraun, President



Ken,

I was not amused by your letter of August 23, 2005. UGS must invest about $190,200 regardless of whether UGS has a buyer for the umbrella stands, and any position that this not supported by the facts or the language of the Agreement would simply be wrong. You say that UGS is not required to make "any sort of lump sum investment," but I never said anything about a lump sum. In fact, the precise language from Paragraph 7 is that UGS "will be required to invest $190,200.00 " before the end of the Agreement. You say that you have already invested $24,000.00, so you still have about $166,200.00 to go. Please let me know when anticipate that you will be making this investment.

We are not trying to rewrite the Agreement; we demand that UGS invest about $192,000, in accordance with Paragraph 7. There is no provision that says that a patent must be issued before this money is invested. The Agreement merely requires that we file and diligently prosecute patent protection, which we have done and continue to do. You, on the other hand, seem to be adding conditions that were not part of the agreement. There is no provision that states that that a patent must be issued prior to UGS making the investment in inventory. UGS must make this investment before the agreement is terminated, unless it wants to accelerate the termination by paying us royalties for a total of 200,000 of the umbrella stands. See Paragraph 8. We expect you to live up to your obligations under the Agreement.

You imply that we somehow misled you about the product. Nothing could be further from the truth. You knew all that we knew, and that is why you were so exited about the product. We are in full compliance with the Agreement, and we expect that UGS will live up to its obligations as well.

*Dean Clark*

*11/14/05*

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

COUNTY IN WHICH THIS ACTION AROSE:   OAKLAND

**I. (a) PLAINTIFFS**

UNITED GLOBAL SOURCING, INC., a Michigan corporation

**DEFENDANTS**

DEAN CLARK, an individual, and MARK JOHNSON, an individual

(b) County of Residence of First Listed Plaintiff   OAKLAND

26/25

County of Residence of First Listed Defendant   FREMONT CTY, WYOMING
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(C) Attorneys (Firm Name, Address, and Telephone Number)

Kevin M. Zielke (P53872) 313-568-6908
Adam B. Strauss (P53319) 248-203-0764
Laura C. Baucus (P56932) 248-203-0796
Dykema Gossett PLLC
400 Renaissance Center
Detroit, Michigan 48243

Case: 5:06-cv-10883
Assigned To : O'Meara, John Corbett
Referral Judge: Scheer, Donald A
Assign. Date : 2/28/2006 @ 12:42 P.M.
Description: CMP UTD GLOBAL
SOURCING V. CLARK, ET AL
(TAM)

**II. BASIS OF JURISDICTION** (Place An "X" In One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place An "X" In One Box For Plaintiff and One Box For Defendant)
(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure Of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 863 DWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Equipment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place An "X" In One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite The Us Civil Statute Under Which You Are Filing And Write A Brief Statement Of Cause.
Do Not Cite Jurisdictional Statues Unless Diversity)

Plaintiffs allege claims under 28 U.S.C. §2201, thus the Court has jurisdiction under 28 U.S.C. §1331. Plaintiffs and defendants are diverse, thus, the Court has jurisdiction under 28 U.S.C. §1332(a)(1).

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND Exceeds $75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE   Feb. 28, 2006

SIGNATURE OF ATTORNEY OF RECORD   P52932

PURSUANT TO LOCAL RULE 83.11

1.    Is this a case that has been previously dismissed?    ☐ Yes

                                                                      ☒ No

      If yes, give the following information:

      Court: _____

      Case No.: _____

      Judge: _____


2.    Other than stated above, are there any pending or previously    ☐ Yes
      discontinued or dismissed companion cases in this or any other
      court, including state court? (Companion cases are matters in which    ☒ No
      it appears substantially similar evidence will be offered or the same
      or related parties are present and the cases arise out of the same
      transaction or occurrence.)

      If yes, give the following information:

      Court: _____

      Case No.: _____

      Judge: _____

Notes: _____